# In the United States Court of Federal Claims

|  |  |
|---|---|
| DEE MONBO,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant,<br><br>and<br><br>T47 INTERNATIONAL, INC.,<br><br>Intervenor-Defendant. | No. 24-cv-1179<br><br>Filed: March 20, 2025 |

## ORDER

Plaintiff Dee Monbo, appearing *pro se*, initiated this post-award bid protest action in July 2024, challenging a United States Department of the Air Force's (Air Force or Agency) Solicitation for decoration services. Defendant moved to dismiss this action, citing multiple, independent reasons why this Court lacked jurisdiction over Plaintiff's claims—one of which is that Plaintiff is debarred from contracting with the United States. Soon after filing this protest, Plaintiff initiated a challenge to her debarment by the United States Department of the Navy in the United States District Court for the District of Columbia under the Administrative Procedure Act. Since lodging this action, Plaintiff has filed numerous motions seeking to stay her case before this Court or to stay her deadlines to respond to Defendant's Motion to Dismiss, claiming the difficulties of litigating multiple, self-initiated cases at the same time. This Court has already denied one such motion on the merits, noting Plaintiff's emerging pattern of dilatory conduct and directing Plaintiff to timely respond to Defendant's Motion to Dismiss.

Most recently, the day before her deadline to respond to Defendant's Motion to Dismiss, Plaintiff moved to amend her Complaint to add (i) new details about why she is an interested party and (ii) a new count for de facto debarment. Pending before the Court are Plaintiff's Motion to Amend and two Motions to Stay. As explained below, Plaintiff's Motions to Stay and Motion to Amend are **DENIED**. Plaintiff fails to demonstrate hardship associated with litigating multiple cases at once, a key element in determining whether a stay is appropriate. As several judges of this Court have recognized, Plaintiff is a sophisticated litigant, who is no stranger to handling a large docket. Indeed, in the last seven years, Plaintiff has filed 37 cases in federal courts, including eight cases since June 2024 in this Court alone. This Court must also deny Plaintiff's Motion to Amend, as Plaintiff's new interested party arguments and de facto debarment claim are futile and the Motion was brought with a dilatory motive.

## BACKGROUND

On July 31, 2024, Plaintiff Dee Monbo, appearing *pro se*, filed her Complaint in this post-award bid protest under seal.[1] *See* ECF No. 1. Plaintiff, an individual federal contractor, protests the Air Force's decision to not consider Plaintiff's proposal for a solicitation for decoration services. *Id.* ¶¶ 1, 8, 15, 33–35. The solicitation is Request for Proposal No. FA480322R0008, which is a 100% set-aside for Section 8(a) businesses. *Id.* ¶ 15.

### I.    Plaintiff's Claims

In her Complaint, Plaintiff alleges that she submitted a joint proposal with her "collaborative partner, [Monbo Group International, Ltd.] MGI." *Id.* ¶¶ 1, 7–13. Plaintiff further contends that she and Monbo Group International, Ltd. (MGI) "agree[d] to pool their resources"

---

[1] Plaintiff filed a public version of her Complaint on October 8, 2024. *See* Redacted Complaint (ECF No. 28) (Complaint or Compl.).

to pursue the Solicitation at issue. *Id.* ¶ 9. As such, Plaintiff and MGI—who Plaintiff asserts "are two separate federal contractors"—allegedly agreed to share the "profits, losses, costs, and risks" associated with their venture. *Id.* ¶¶ 8, 10. Plaintiff further contends that because of the Agency's actions, she has personally "lost an opportunity to earn profit." *Id.* ¶ 14. While Plaintiff claims that she and MGI jointly submitted the bid to the Agency, it appears that only MGI was listed as the bidder. *See id.* ¶ 13; *see, e.g.*, *id.*, Ex. 16 at 144 (debriefing memorandum from the contracting officer stating that "Monbo Group International . . . . was not considered for the award").

Plaintiff's Complaint includes four counts. *First*, that the Agency's decision to not consider her proposal for award, based on an Agency determination that the proposal failed to acknowledge an amendment to the Solicitation, lacked a rational basis because (i) she did in fact acknowledge receipt of the amendment, (ii) the method of her acknowledgment complied with the terms of the Solicitation, and (iii) the amendment was posted seven days before proposals were required to be submitted. Compl. ¶¶ 38–50. *Second*, to the extent that Plaintiff did not respond to the amendment, that failure was a minor clerical error that should have been resolved through clarification, and the Agency's decision not to waive the error was an abuse of discretion. *Id.* ¶¶ 51–61. *Third*, that the Agency's decision not to consider Plaintiff's proposal lacked a rational basis because the amendment was not a true Solicitation amendment. *Id.* ¶¶ 62–68. *Fourth*, that Plaintiff was prejudiced by the Agency's errors. *Id.* ¶¶ 69–80.

## II.    Procedural History

Defendant moved to dismiss Plaintiff's Complaint on September 24, 2024 pursuant to Rules 12(b)(1), 12(b)(6), and 41(b) of the Rules of the United States Court of Federal Claims (Rule(s)). Motion to Dismiss (ECF No. 16) (Mot. to Dismiss). Plaintiff's initial deadline to respond to Defendant's Motion to Dismiss was October 22, 2024. *See* Rule 7.2(b)(1). In a Joint Status Report, Plaintiff requested an additional 45 days to respond to the Motion to Dismiss. *See*

ECF No. 19.  The Court granted her request and gave Plaintiff until December 6, 2024 to respond. *See* Order, dated Sept. 27, 2024 (ECF No. 24).  On November 25, 2024, Plaintiff filed a Motion requesting an additional 30-day extension to respond to the Motion to Dismiss, which the Court granted.  *See* ECF No. 29; Order, dated Nov. 25, 2024 (ECF No. 30).  On December 20, 2024, having already received an additional 75 days to respond the Motion to Dismiss, Plaintiff filed yet another Motion requesting 30 more days to respond.  *See* ECF No. 33.  In light of Plaintiff's *pro se* status, the Court granted the Motion, giving Plaintiff until February 6, 2025 to respond, but informed Plaintiff that "[n]o further extensions of time will be granted to Plaintiff" and advising Plaintiff that "managing multiple cases . . . does not constitute good or extraordinary cause for an extension of time."  Order, dated Dec. 23, 2024 (ECF No. 34).

Subsequently, Plaintiff filed four motions seeking to stay the entire action or suspend her deadline to respond to Defendant's Motion to Dismiss.  *See* ECF Nos. 35, 36, 40, 41.  *First*, on January 16, 2025 Plaintiff filed a Motion to Stay the case, explaining that she had filed a case in the United States District Court for the District of Columbia (District Court) challenging her debarment under the Administrative Procedures Act (APA), and needed time to focus on that case. *See* Emergency Motion to Stay Pending Resolution of the Administrative Procedure Act Case (ECF No. 35) (First Motion to Stay) at 1−3;[2] *Monbo v. U.S. Dep't of Navy*, Case No. 24-cv-2547 (D.D.C. Aug. 30, 2024) (APA Challenge).  Defendant opposed Plaintiff's First Motion to Stay on January 30, 2025, and Plaintiff filed her Reply on February 6, 2025.  ECF Nos. 38, 39.

*Second*, on January 21, 2025, Plaintiff filed a Motion to Suspend her deadline to respond to the Motion to Dismiss until after the Court ruled on her Motion to Stay.  Motion to Suspend

---

[2] Citations throughout this Order reference to the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

Due Date (ECF No. 36) (Motion to Suspend).  The Court denied Plaintiff's Motion to Suspend two days later but gave Plaintiff one final short extension, until February 14, 2024, to respond to Defendant's Motion to Dismiss given the briefing schedule on Plaintiff's First Motion to Stay. Order, dated Jan. 23, 2025 (ECF No. 37) (Final Extension Order).  *Third*, on February 10, 2025, Plaintiff attempted to file a Second Motion to Stay, which the Clerk of Court flagged as deficient, and this Court accordingly rejected the same day.  Order, dated Feb. 10, 2025 (ECF No. 40). *Fourth*, also on February 10, Plaintiff filed a Third Motion to Stay.  ECF No. 41 (Third Motion to Stay).

*Finally*, on February 13, 2025, rather than timely file her response to the Motion to Dismiss, which was due the following day, Plaintiff filed a Motion for Leave to Amend her Complaint.  *See* Motion to Amend (ECF No. 42) (Mot. to Amend).  The Motion attached a Proposed First Amended Complaint.  *See* ECF No. 42-1 (Proposed Amended Complaint).  Later that day, despite noting its concerns with Plaintiff's dilatory behavior, the Court issued an Order staying Plaintiff's obligation to respond to Defendant's Motion to Dismiss pending resolution of her Motion to Amend and ordering Defendant to respond to the Motion to Amend.  Order, dated Feb. 13, 2025 (ECF No. 43) (Order Staying Response).  Defendant opposed Plaintiff's Motion to Amend on February 26, 2025, and Plaintiff filed her Reply in support of her Motion to Amend on March 5, 2025.  *See* Defendant's Response to Plaintiff's Motion for Leave to Amend (ECF No. 44) (Def. Amend. Resp.); Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Leave to Amend (ECF No. 45) (Pl. Amend. Reply).

## APPLICABLE LEGAL STANDARDS

This Court liberally construes filings by a *pro se* litigant.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  While this Court allows

ambiguities in *pro se* filings, it "does not excuse . . . failures" on the merits. *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

## I.      Motions to Stay

This Court's authority to issue a stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Whether and for how long to stay proceedings are matters "within the sound discretion" of this Court.  *Groves v. McDonough*, 34 F.4th 1074, 1079 (Fed. Cir. 2022); *see also Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) ("When and how to stay proceedings is within the sound discretion of the trial court." (citing *Landis*, 299 U.S. at 254–55)).  That discretion is not boundless, particularly where a stay is "immoderate or indefinite" or "protracted or indefinite." *Groves*, 34 F.4th at 1080 (quoting *Cherokee Nation*, 124 F.3d at 1416).

"The proponent of a stay bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).  The proponent "must make out a clear case of hardship or inequity in being required to go forward."  *Landis*, 299 U.S. at 255.  Then, the Court weighs "the need for the stay against the countervailing interests."  *Cherokee Nation*, 124 F.3d at 1418; *see also Topsnik v. United States*, 114 Fed. Cl. 1, 3 (2013) ("[A] court must exercise its own judgment to 'weigh competing interests and maintain an even balance' among those fulfilled by a stay and those frustrated by such action." (quoting *Cherokee Nation*, 124 F.3d at 1416)).

## II.     Motion to Amend

Rule 15(a) permits a plaintiff to amend its complaint "once as a matter of course" if done within 21 days of service of (i) the original complaint, (ii) a responsive pleading, or (iii) a motion under Rules 12(b), 12(e), or 12(f).  Rule 15(a)(1)(A)–(B).  "In all other cases," Rule 15(a)(2) permits a party to amend its pleadings "with the opposing party's written consent or the court's

6

leave." Rule 15(a)(2). The Rule further states that courts should "freely give leave when justice

so requires." *Id.* It is well-established that the grant or denial of an opportunity to amend pleadings

is "within the discretion of the trial court." *Datascope Corp. v. SMEC, Inc.*, 962 F.2d 1043, 1045

(Fed. Cir. 1992) (citing *Zenith Radio Corp. v. Hazeltine Rsch, Inc.*, 401 U.S. 321, 330 (1971)). A

court will typically grant a motion to amend absent (1) undue delay, bad faith, or dilatory motive;

(2) undue prejudice to the party opposing the amendment; or (3) futility of the amendment. *Mitsui*

*Foods, Inc. v. United States*, 867 F.2d 1401, 1403–04 (Fed. Cir. 1989) ("[T]he existence of such

factors as . . . 'dilatory motive' [or] 'futility of amendment' may justify the denial of a motion for

leave to amend." (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))); *see also Monbo v. United*

*States*, --- Fed. Cl. ----, 2025 WL 732990, at \*6 (Mar. 7, 2025) ("A court may deny a motion to

amend a complaint based on futility if . . . the claim added by the amendment could not withstand

a motion to dismiss." (quoting *Island Creek Assocs., LLC v. United States*, 172 Fed. Cl. 729, 742

(2024))).

## DISCUSSION

Pending before the Court are Plaintiff's First and Third Motions to Stay and Plaintiff's

Motion to Amend. For the reasons discussed below, each of Plaintiff's pending Motions are

**DENIED**.

### I.    Plaintiff's Motions to Stay are Denied.

Plaintiff fails to meet her burden of demonstrating that denial of a stay will impose a

hardship. Plaintiff's First Motion to Stay dedicates only two sentences to her argument in support

of a stay. First Mot. to Stay at 2. Plaintiff first makes a conclusory assertion that a stay of all

proceedings "is necessary." *Id.* Plaintiff then contends that, "[m]ore importantly," a stay would

"give the parties (i.e.; DOJ and Plaintiff) time to focus their time and efforts on the pending APA

[Challenge]." *Id.* While Plaintiff's Third Motion to Stay contains reasoning to support her stay,

Plaintiff largely focuses on the harm that she would suffer if forced to respond to Defendant's

Motion to Dismiss and litigate multiple cases concurrently.  *See* Third Mot. to Stay at 3–5.[3]

Plaintiff contends that she "should not be rushed into responding to the Motion to Dismiss" as

litigating two cases at once will cause Plaintiff to "suffer[] hardship and [] irreparable injury." *Id.*

at 4; *see also id.* ("Compelling the *pro se* Plaintiff to respond to the Motion to Dismiss on or before

February 28, 2025 would create a significant hardship for the Plaintiff who is a pro se litigant.").

Plaintiff also states that "a stay would not thwart Defendant's rights" to the same degree as

requiring Plaintiff to litigate her cases would harm her rights.  *Id.*

The prospect of concurrent litigation itself is not a hardship.  *See Monbo*, 2025 WL 732990,

at *6 ("[T]he prospect of concurrent or additional litigation is not on its own a hardship.") (citing

*Brown v. United States*, 131 Fed. Cl. 540, 543 (2017)); *cf. Brown*, 131 Fed. Cl. at 543 ("The court

cannot agree that the possible need for additional briefing on the issue of liability constitutes a

hardship that necessitates a stay of proceedings.").  Thus, Plaintiff's sole purported hardship—that

the deadlines in the instant action and in her APA Challenge conflict and do not allow sufficient

time to litigate both cases—is no hardship.  This Court has provided Plaintiff with more than ample

opportunity to respond to Defendant's Motion to Dismiss, taking Plaintiff's initial deadline from

October 22, 2024 to February 14, 2024, a total of an additional 115 extra days.  *See* Rule 7.2; Final

Extension Order at 1–2.  Plaintiff's assertion that she "she should not be rushed into responding to

the Motion to Dismiss" due to her deadlines in her District Court APA Challenge is risible given

---

[3] Plaintiff's argument is based on the legal standard set out in *Nken v. Holder*, which addressed a stay of a court's order pending appeal—not a stay of an entire case.  *See* Third Mot. to Stay at 3–5 (citing *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (in turn quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009))).  Nonetheless, the Court considers Plaintiff's arguments, as they bear on the Court's "balanc[ing of] the need for the stay against the countervailing interests." *Cherokee Nation*, 124 F.3d at 1418; *see also Erickson*, 551 U.S. at 94.

the extra months this Court afforded to Plaintiff to respond to the Motion to Dismiss.[4]  Third Mot.

to Stay at 4.

Further, Plaintiff's concern about litigating multiple cases rings hollow as she is a

sophisticated litigant who has initiated dozens of cases in multiple federal courts.  *See Monbo v.*

*United States*, No. 24-2083, 2025 WL 704402, at *1 & n.3, *7 (Fed. Cl. Jan. 24, 2025) (noting that

Plaintiff "is a sophisticated party" and discussing other cases initiated by Plaintiff); *Monbo*, 2025

WL 732990, at *6 (same); *Monbo v. United States*, No. 24-1658, ECF No. 31, at 1 (Fed. Cl. Feb.

25, 2025) (same); *see also Monbo v. United States*, No. 25-325, ECF No. 10, at 3–5 (Fed. Cl. Mar.

12, 2025) (describing Plaintiff's extensive litigation history, which includes filing 37 cases in

federal courts in the past 7 years, and the dismissal of over 10 cases for lack of jurisdiction).

Indeed, Plaintiff has filed 8 cases in the Court of Federal Claims since June 2024.[5]  The Court will

not permit Plaintiff's own actions to further hinder Defendant's and this Court's interest in

resolving this litigation in a timely manner.

Finally, as explained further below, Plaintiff cannot establish that any anticipated District

Court decision in the APA Challenge will significantly affect the disposition of this action.  Indeed,

Plaintiff's APA Challenge only challenges her *personal* debarment—not the debarment of MGI,

with whom Plaintiff claims to have submitted a joint proposal.  *See, e.g.*, Mot. to Stay, App'x A

---

[4] Further, Plaintiff's only remaining deadline in the District Court is April 17, 2025, when her
Reply in Support of her Motion for Summary Judgment and Opposition to Defendant's Cross
Motion for Summary Judgment is due in that action.  *See* Third Mot. to Stay at 2.

[5] *See Monbo v. United States*, No. 24-890 (Fed. Cl. June 4, 2024); *Monbo v. United States*, No.
24-1179 (Fed. Cl. July 31, 2024); *Monbo v. United States*, No. 24-1368 (Fed. Cl. Sept. 3, 2024);
*Monbo v. United States*, No. 24-1658 (Fed. Cl. Oct. 15, 2024); *Monbo v. United States*, No. 24-
1683 (Fed. Cl. Oct. 17, 2024); *Monbo v. United States*, No. 24-2083 (Fed. Cl. Dec. 18, 2024);
*Monbo v. United States*, No. 24-2139 (Fed. Cl. Dec. 27, 2024); *Monbo v. United States*, No. 25-
325 (Fed. Cl. Feb. 20, 2025).

(ECF No. 35-1) at 34–35 (seeking declaration that Plaintiff was improperly debarred and an injunction "to remove the references to suspension or debarment from Plaintiff's name"); Compl. ¶¶ 1, 13.  Thus, even if Plaintiff were to prevail in her APA Challenge in District Court, MGI would remain debarred, and Plaintiff and MGI's joint proposal would remain ineligible for award because MGI's name was on the proposal.  Compl. ¶ 13; *id.,* Ex. 16 at 144; *see* FAR 9.405(a) ("Contractors debarred . . . are excluded from receiving contracts, and agencies shall not solicit offers from, award contracts to, or consent to subcontracts with these contractors.").  Accordingly, staying this case only works to hinder—rather than promote—judicial efficiency.  In sum, Plaintiff fails to "bear the burden of establishing [her] need" for the stay.  *See Clinton*, 520 U.S. at 708.

Even if Plaintiff's APA Challenge could somehow affect the outcome of this case, Defendant advances several alternative grounds for dismissal.  *See* Mot. to Dismiss at 7–20.  These include arguments that (i) Plaintiff cannot proceed *pro se* on behalf of MGI under Rule 83.1; (ii) Plaintiff lacks Article III standing because she suffered no "injury in fact"; and (iii) Plaintiff is not an interested party under 28 U.S.C. § 1491(b)(1).  *Id.*  The outcome of Plaintiff's APA Challenge will have no effect on these threshold arguments and the Court finds little benefit in waiting for the result of the APA Challenge before the parties fully brief, and this Court decides, the long-pending Motion to Dismiss in the present action.  *See Landis*, 299 U.S. at 255–57.

In sum, Plaintiff has failed to carry her burden of showing that a severe hardship or burden would follow from a denial of her Motions to Stay.  *See Clinton*, 520 U.S. at 708.  Accordingly, Plaintiff's First and Third Motions to Stay are **DENIED**.

## II.    Plaintiff's Motion to Amend is Denied.

### A.    Plaintiff's Motion to Amend is Futile.

Plaintiff's Motion to Amend is futile because it could not withstand a motion to dismiss. Plaintiff seeks to amend her Complaint by adding a new section describing why Plaintiff is an

interested party, as well as a new count for de facto debarment.  Proposed Am. Compl. ¶¶ 7–11, 86–92.  While Plaintiff's original Complaint described Plaintiff as a sole proprietor and a "sought-after Expert" in government contracting who is a known collaborator with separate government contractor, MGI, Plaintiff's Proposed Amended Complaint now describes Plaintiff as a sole proprietor, a collaborative partner with MGI, a subcontractor of MGI, and an offeror of project manager services.  *Compare* Compl. ¶¶ 1, 7–10, *with* Proposed Am. Compl. ¶¶ 1, 7–11.  Plaintiff, now purporting to also be a MGI subcontractor, contends that she has standing under the United States Court of Appeals for the Federal Circuit's now-vacated decision in *Percipient.ai*.  Proposed Am. Compl. ¶¶ 8–10 (citing *Percipient.ai, Inc. v. United States*, 104 F.4th 839 (Fed. Cir.), *reh'g en banc granted*, *opinion vacated*, 121 F.4th 1311 (Fed. Cir. 2024)).  Plaintiff also seeks to add a claim for de facto debarment, alleging that the Agency constructively barred Plaintiff from contracting without going through the formal processes required to formally debar a contractor.  *Id.* ¶¶ 86–92.

Plaintiff's Motion to Amend and Reply in support of her Motion to Amend include few substantive arguments to justify amendment.  *See* Mot. to Amend. at 1–2; Pl. Am. Reply at 1–3.  Plaintiff, for example, simply notes that Federal Rule of Civil Procedure 15 provides that "[t]he court should freely give leave [to amend] when justice so requires."  Mot. to Amend. at 1 (citing Fed. R. Civ. P. 15(a)(2)); *see* Rule 15(a)(2) (mirroring language of Fed. R. Civ. P. 15(a)(2)); *see also Northrop Grumman Sys. Corp. v. United States*, 137 Fed. Cl. 677, 681 (2018) (recognizing that Fed. R. Civ. P. 15(a) and Rule 15(a) of this Court are identical).

Plaintiff's proposed amendments are futile.  "When a party faces the possibility of being denied leave to amend on the ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the

amended pleading that the claim could survive a dispositive pretrial motion." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006)). To withstand a motion to dismiss, a plaintiff's proposed additional claims and supporting factual allegations must at least "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). *First*, Plaintiff's attempt to add an assertion that she is a subcontractor is futile. A Plaintiff in a bid protest must demonstrate that it is an "interested party" to establish statutory standing under 28 U.S.C. § 1491(b)(1). *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009). In her Proposed Amended Complaint, Plaintiff seeks to recast herself as an interested party because she is a subcontractor of MGI who offers project management services. Proposed Am. Compl. ¶¶ 7–11. Courts, however, "have consistently held that subcontractors do not have standing to bring a bid protest as an 'interested party'" because "potential subcontractors are, by definition, not actual or prospective bidders." *Acuity-CHS Middle E. LLC v. United States*, 173 Fed. Cl. 788, 799 (2024) (citing *Am. Fed'n of Gov't Emps. v. United State*s, 258 F.3d 1294, 1302 (Fed. Cir. 2001)); *see also Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008) (concluding that protestors are "not mere 'disappointed subcontractors' without standing"); *MCI Telecomms. Corp. v. United States*, 878 F.2d 362, 365 (Fed. Cir. 1989) (construing nearly identical definition of "interested party" under predecessor statute and concluding that an offeror who "deliberately chose to be only a subcontractor and not to submit its own proposal" could not achieve "prospective bidderhood"). Thus, Plaintiff's new allegation that she was a subcontractor of MGI is futile.[6]

---

[6] Plaintiff attempts to invoke the narrow exception described in the Federal Circuit's now-vacated *Percipient.ai* decision. Proposed Am. Compl. ¶¶ 8–10. Even if not vacated, *Percipient.ai*'s holding was cabined to the facts of that case, where a plaintiff alleged a "violation of statute or regulation in connection with a procurement or proposed procurement" under 10 U.S.C. § 3453, without directly or indirectly challenging a solicitation. *Percipient.ai*, 104 F.4th at 853, 855–56.

*Second*, Plaintiff's de facto debarment claim fails to state a claim and, therefore, could not

survive a motion to dismiss under Rule 12(b)(6). De facto debarment occurs when an agency

effectively precludes a prospective contractor from being awarded a contract without complying

with the applicable debarment procedures in FAR Subpart 9.4. *See Goodearth Distrib., LLC v.*

*United States*, No. 23-339, 2024 WL 247032, at *6 (Fed. Cl. Jan. 23, 2024) (citing *TLT Const.*

*Corp. v. United States*, 50 Fed. Cl. 212, 215 (2001)); *Monbo*, 2025 WL 732990, at *14 (quoting

*MG Altus Apache Co. v. United States*, 111 Fed. Cl. 425, 443 (2013) ("A de facto debarment

involves agency action that falls short of a formal 'FAR subpart 9.4 . . . debarment [or]

suspension.'"). Plaintiff's claim of de facto debarment rests on the assertion that the Air Force is

making a "systematic effort . . . to reject all of the Plaintiff's joint proposals (with MGI)" in

violation of her constitutional rights and FAR 9.406-3. Proposed Am. Compl. ¶¶ 90–91 (citing

*CRC Marine Servs., Inc. v. United States*, 41 Fed. Cl. 66, 84 (1998)). Plaintiff's new claim,

however, is undercut by Plaintiff's *formal* debarment. Def. Amend. Resp. at 2. By definition,

---

Plaintiff does not fit this exception because she directly challenges the Solicitation. *See id.*; Compl.
¶¶ 1, 4, 15.

Plaintiff also contends that Defendant is precluded from arguing that Plaintiff is not an interested
party here based on an opinion from the District Court attached to Plaintiff's Reply. Pl. Am. Reply
at 2–3; *id.*, Ex. 1 (ECF No. 45–1) (D.D.C. Opinion). The D.D.C. Opinion dismissed a bid protest
brought by Plaintiff in the District Court. D.D.C. Opinion at 1–7. Plaintiff mischaracterizes the
D.D.C. opinion, which does not conclude that Plaintiff is an interested party or that she has
standing here. *See* D.D.C. Opinion at 5–6 ("[T]he Court need not decide whether Monbo is an
'interested party' to conclude that ADRA deprives it of subject-matter jurisdiction over her bid-
protest claim."), 7 ("[I]f Monbo's suit belongs in any federal court, it belongs in the Court of
Federal Claims."); Pl. Am. Reply at 2–3. The D.D.C. Opinion did not rule on whether Plaintiff
would have standing as a subcontractor. *See* D.D.C. Opinion at 5–7. As discussed above, that is
the narrow issue before the Court here: whether Plaintiff's contention that she is an interested party
because she is an MGI subcontractor could withstand a motion to dismiss. Because it cannot, the
proposed amendment is futile. *See Kemin Foods*, 464 F.3d at 1354–55; *Mitsui Foods*, 867 F.2d at
1403–04.

Plaintiff (and MGI) could not be *de facto* debarred, given that they are *formally* debarred and have

received the required due process under FAR 9.406.  *See Monbo*, 2025 WL 732990, at *2 & n.5,[7]

*14 (explaining that de facto debarment "involves agency action that falls short of a formal 'FAR

subpart 9.4 . . . debarment'" (quoting *MG Altus*, 111 Fed. Cl. at 443)); *Bannum, Inc. v. Samuels*,

221 F. Supp. 3d 74, 86 (D.D.C. 2016) (explaining difference between formal debarment, which

involves the procedures laid out in FAR 9.406-3, and de facto debarment, which occurs when a

contractor is barred "from receiving government business without invoking formal debarment

proceedings"); *IMCO, Inc. v. United States*, 97 F.3d 1422, 1427 (Fed. Cir. 1996) ("[T]he process

due a contractor facing a proposed debarment is satisfied by the procedures set out at [FAR]

9.406.").  Thus, the Agency's rejection of Plaintiff's allegedly joint bid with MGI was not the

product of a systematic effort to reject Plaintiff's proposal, but rather was the result of a formal

debarment undertaken by the Agency.[8]

---

[7] *Exclusion: Monbo Dee*, Sam.gov, https://sam.gov/exclusions-new?pirKey=523071&pirValue= 1701270467702707 (last visited Mar. 19, 2025) (noting that the exclusion status for Dee Monbo, the firm, is active and that debarment proceedings are complete); *Exclusion: Dee Monbo*, Sam.gov, https://sam.gov/exclusions-new?pirKey=522051&pirValue=1701270412896524    (last    visited Mar. 19, 2025) (noting that the exclusion status for Dee Monbo, the individual, is active and that debarment proceedings are complete)

[8] Plaintiff also may not challenge her debarment directly here because this Court lacks jurisdiction to review the propriety of debarments.  *IMCO*, 97 F.3d at 1425 ("The Tucker Act does not give the court jurisdiction to review the propriety of an agency's decision to debar a contractor, however; such a challenge must be brought in district court under the Administrative Procedure Act."); Pl. Am. Reply at 3 (contending that Plaintiff's debarment is improper).  While this Court can review debarments "when the 'challenged suspension was connected to the protested procurement because the suspension was imposed by the procuring agency,'" here, a different organization—the Navy—formally debarred Plaintiff, so she cannot challenge her debarment via a protest of an Air Force Solicitation.  *Monbo*, 2025 WL 732990, at *11 (quoting *MED Trends, Inc. v. United States*, 101 Fed. Cl. 638, 650 (2011)).  *See IMCO*, 97 F.3d at 1425; Pl. Am. Reply. at 3 (referencing debarment by the Navy); *supra* note 6 (listing exclusions by the Navy); Compl. ¶¶ 2, 15 (protesting Solicitation issued by the Air Force).  Indeed, Plaintiff's claim for debarment here is not "properly raised 'as a protest [ground] . . . , [but] as an isolated claim to nullify the

Even if not formally debarred, Plaintiff has failed to allege in her Proposed Amended Complaint (or otherwise) a pattern of rejections sufficient to establish a de facto debarment claim. Proposed Am. Compl. ¶¶ 86–92; *see also Monbo*, 2025 WL 732990, at *14 (noting that a plaintiff who fails to allege a pattern of rejections cannot establish de facto debarment claim) (citing *Stapp Towing, Inc. v. United States*, 34 Fed. Cl. 300, 312 (1995)). Plaintiff's Proposed Amended Complaint is devoid of any factual allegations to support such a claim and instead merely concludes that "the agency's conduct demonstrates that the agency will not award the Plaintiff's winning joint proposal contracts." Proposed Am. Compl. ¶ 92. Thus, Plaintiff's explanation of how she has been de facto debarred is merely a "threadbare recital of a cause of action's elements" that "is insufficient to withstand a motion to dismiss." *Iqbal*, 556 U.S. at 663–64; Proposed Am. Compl. ¶¶ 86–92.

*Finally*, Plaintiff lacks standing to bring a de facto debarment claim. This Court applies the same standing requirements as those required by Article III courts. *Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017) (quoting *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003)). "For a party to have standing, it must satisfy constitutional requirements and also demonstrate that it is not raising a third party's legal rights." *Id.* (citing *Kowalski v. Tesmer*, 543 U.S. 125, 128–29 (2004)). To establish Article III standing, "a plaintiff must show an injury in fact caused by the defendant and redressable by a court order." *United States v. Texas*, 599 U.S. 670, 676 (2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). An alleged injury is redressable only if it is "'likely,' as opposed to merely 'speculative,'

---

debarment.'" *Monbo*, 2025 WL 732990, at *15 (quoting *MG Altus Apache Co.*, 111 Fed. Cl. at 443). Thus, the Court lacks jurisdiction to hear Plaintiff's challenge to her debarment.

that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

Plaintiff's alleged injury is not redressable by this Court. Plaintiff's proposed de facto debarment claim seeks to end Plaintiff's personal debarment. Proposed Am. Compl. ¶¶ 86–92; *see id.* ¶ 90 ("Here, the Agency has unlawfully de facto debarred the Plaintiff in violation [of] FAR 9.406-3 and in violation of Plaintiff's constitutional rights."). Indeed, that is all she may challenge because Plaintiff, who is not an attorney and is acting *pro se*, cannot bring a de facto debarment challenge on behalf of MGI, a Maryland corporation. *See* Rule 83.1(a)(3); *Monbo*, 2025 WL 732990, at *1 (noting that MGI is a Maryland corporation). Rule 83.1(a)(3) provides that "[a]n individual who is not an attorney . . . may not represent a corporation, an entity, or any other person in any proceeding before this court." Rule 83.1(a)(3). "Accordingly, '[a] corporation appearing before the United States Court of Federal Claims . . . must be represented by an attorney.'" *Monbo*, 2025 WL 732990, at *7 (quoting *Balbach v. United States*, 119 Fed. Cl. 681, 683 (2015)); *see also Talasila, Inc. v. United States*, 240 F.3d 1064, 1066–67 (Fed. Cir. 2001) (recognizing that previous version of Rule 83.1(a)(3), which provided that "[a] corporation may only be represented by counsel" was "clear and unqualified"). Indeed, two other judges of this Court have concluded that Plaintiff may not represent MGI *pro se* under Rule 83.1(a)(3). *See Monbo*, 2025 WL 732990, at *7–9; *Monbo v. United States*, No. 24-890, 2024 WL 5165707, at *5–7 (Fed. Cl. Dec. 19, 2024).

Further, even if Plaintiff could succeed on her proposed de facto debarment claim, MGI would remain debarred because Plaintiff only challenges her own de facto debarment. Proposed Am. Compl. ¶¶ 86–92. Indeed, as noted, she cannot challenge MGI's debarment without an attorney. *See* Rule 83.1(a)(3). Thus, any relief from the Court would be tailored to Plaintiff's alleged de facto debarment, not MGI's. And so long as MGI remains debarred, the Agency cannot

award the contract to MGI.  *See* FAR 9.405(a) ("Contractors debarred . . . are excluded from receiving contracts, and agencies shall not solicit offers from, award contracts to, or consent to subcontracts with these contractors."); *IMCO*, 97 F.3d at 1425; *see also Assoc. Energy Grp., LLC v. United States*, --- F.4th ----, 2025 WL 850043, at *4 (Fed. Cir. Mar. 19, 2025) (holding that protestor lacked Article III standing where it would not be eligible for award even if the Court granted protestor's relief sought).  Accordingly, Plaintiff lacks Article III standing.

### B.    Plaintiff's Brought Her Motion to Amend With a Dilatory Motive.

Even if Plaintiff's Proposed Amended Complaint was not futile, this Court would deny Plaintiff's Motion to Amend as the record supports the finding that it was filed with a dilatory motive.  "[B]ad faith or dilatory motive on the part of the movant" are two reasons to deny leave to amend.  *Mitsui Foods*, 867 F.2d at 1403–04.  Determining whether a motion to amend was brought in bad faith or with a dilatory motive is a factual inquiry that looks to whether an amendment was brought for an improper purpose.  *See Hanover Ins. Co. v. United States*, 134 Fed. Cl. 51, 61 (2017); *Square One Armoring Servs. Co. v. United States*, 152 Fed. Cl. 536, 549 (2021).

As discussed above, Plaintiff received four extensions totaling 115 additional days to respond to Defendant's Motion to Dismiss.  *See* ECF Nos. 24, 30, 34, 37.  The last two extensions Plaintiff received were awarded despite the Court's previous warning to Plaintiff that no further extensions would be granted absent extraordinary cause.  *See* Order, dated Nov. 25, 2024 (ECF No. 30) ("No further extensions of time will be granted for Plaintiff to file her Response absent extraordinary cause.").  Although the Court provided Plaintiff with ample time to prepare a response to Defendant's Motion to Dismiss, Plaintiff continued to file motion after motion seeking to further delay her response.  *See* ECF Nos. 35, 36, 40, 41.  In denying one of these requests, the Court made clear that no additional extension would be granted and subsequently informed Plaintiff that it had "concern[s] with Plaintiff's dilatory behavior."  Order, dated Feb. 13, 2025

17

(ECF No. 43); Final Extension Order (reiterating that Plaintiff "must respond to Defendant's Motion to Dismiss by February 14, 2025").

Just one day before her Response was due, Plaintiff filed her Motion to Amend. *See* Mot. to Amend.; Final Extension Order. The Proposed Amended Complaint contained just two additions. Proposed Am. Compl. ¶¶ 7–11, 86–92. The first addition concerning her status as an interested party mostly repeated allegations made in her original Complaint. *Id.* ¶¶ 7–11. The second addition concerning her debarment claim was less than a page long and contained a mere threadbare recital of a cause of action's elements. *Id.* ¶¶ 86–92. This Court concludes that Plaintiff brought her Amended Complaint as an attempt to circumvent this Court's orders and avoid responding to Defendant's Motion to Dismiss. *See Monbo*, 2025 WL 732990, at *14 (finding that Plaintiff brought a similar motion to amend with dilatory motive); *Hanover Ins. Co.*, 134 Fed. Cl. at 61.

* * * *

In sum, Plaintiff's proposed amendments to her Complaint are futile because they would not withstand a motion to dismiss and the Motion was lodged with dilatory motive. *See Mitsui Foods*, 867 F.2d at 1403–04 ("[T]he existence of such factors as . . . 'dilatory motive' [or] 'futility of amendment' may justify the denial of a motion for leave to amend." (quoting *Foman*, 371 U.S. at 182)); *Kemin Foods*, 464 F.3d at 1354–55 ("When a party faces the possibility of being denied leave to amend on the ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion."). Therefore, Plaintiff's Motion to Amend is **DENIED**.

**CONCLUSION**

For the reasons stated above, the Court **DENIES** Plaintiff's First Motion to Stay (ECF No. 35), Third Motion to Stay (ECF No. 41), and Motion to Amend (ECF No. 42). Plaintiff shall respond to Defendant's Motion to Dismiss by **March 31, 2025**. Given Plaintiff's "dilatory behavior" in this case, and the vast amount of additional time Plaintiff has received to respond to the Motion to Dismiss, no further extensions will be granted. *See* Order, dated Feb. 13, 2024 (ECF No. 43).

The Court stresses to Plaintiff that she must respond to Defendant's Motion to Dismiss absent an Order issued by this Court indicating otherwise. *See id.* at 1–2 (explaining that filing of a Motion for Leave to Amend Plaintiff's Complaint did not relieve Plaintiff of her duty to respond to Defendant's Motion to Dismiss). Plaintiff is advised that failure to timely respond to the Motion to Dismiss will not only constitute a waiver of Plaintiff's opportunity to rebut Defendant's contentions that this Court lacks jurisdiction, but may also result in dismissal of Plaintiff's case under Rule 41(b). *See Claude E. Atkins Enters., Inc. v. United States*, 899 F.2d 1180, 1184 (Fed. Cir. 1990)); *see also Cerf v. United States*, 621 F. App'x 651, 652 (Fed. Cir. 2015) (affirming dismissal under Rule 41(b) after Plaintiff was specifically warned that his case would be dismissed if he did not respond to the government's motion to dismiss).

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge